Good morning, ladies and gentlemen. Our first case for argument is United States v. Mackey. Mr. Miraglia. Good morning, Your Honor. Your Honors, sorry. Please proceed, counsel. Judge, as indicated in our brief, the sentencing of Mr. Mackey was a significant departure based on arguments or ideas put forth by Judge Tharp, which aren't supported substantively. Specifically, Mr. Mackey had no criminal history or minimal criminal history, I should say, before these alleged incidents in 2014 and into the beginning of 2015, to which he pled guilty to, and no criminal history thereafter. It's our position that this substantial departure from the sentencing range 55 months above the guideline calculations was procedural error, as there is no meaningful analysis, in our opinion, put into his determination that it was appropriate. And we're asking this court to re-sentence him, as we view this as within the court's purview at this point, to re-sentence him, review this de novo, and apply an appropriate sentence. Mr. Mackey, at the time... The Court of Appeals does not re-sentence people. Then I'm mistaken. I thought this court could re-sentence him. No, we have no such authority. Well, then, Judge, then I would respectfully ask that it be remanded to Judge Tharp for re-sentencing if the court agrees with my arguments that I'm putting forward. But as I was saying, Mr. Mackey had a work history, no criminal history, married to a registered nurse, caring for a child... Counsel, these are arguments one might present to a district judge. You need to make arguments to a court of appeals. What I was going to say was those facts that I did present during sentencing were discounted, dismissed, not even considered. Judge Tharp... I'm only putting forth that information because that is the information that I presented to the trial court that was thoroughly dismissed. It's beyond discounted. It's beyond discredited. It was never considered. Just as a court, a sentencing court may not assume or presume that sentencing calculations, sentencing guideline calculations are reasonable, so may he not determine that they are unreasonable, which is what... Counsel, I took one of your major arguments in your brief to be that the district court are too heavily focused on gun violence in Chicago as a reason to give Mr. Mackey a higher sentence. And I do read the discussion of that in the district court's comments. You don't address in your brief our decision in Hendricks, U.S. v. Hendricks, and that case makes clear that district judges can consider community violence in the context of sentencing a specific defendant. So I wanted to know your view of that. How do you get around Hendricks? Well, Judge, the way it was put forth by Judge Tharp, it was a general proposition. It wasn't based on statistics. It was a general notion. I'm not sure if Judge Tharp was putting forth that information based on something that he saw in the news the night before. It was very general. It was very vague. And his position seemed to be totally focused on that notion and the deterrence that such an extreme sentence, he believed, would have down the road. Respectfully, I think that the judge gave that specific sentencing factor way too much weight to the complete exclusion. Counsel, let me try again. You were asked a specific question about a specific case decided by this circuit, Hendricks. The question is, how is your position consistent with Hendricks? Judge, the argument that I just put forth is my response to that question. You're not discussing Hendricks. I'm not discussing it because Hendricks isn't in front of me right now, Judge, and I'm not thoroughly familiar with the case at all. So I may not be discussing it effectively because I don't have Hendricks cited in my brief, and I don't have the case in front of me. You cited over four pages of the prosecutor's brief. It's a case we expect you to be familiar with. Well, I'm not judging. I would just ask the court to consider my arguments. I understand the position that this court may have taken in Hendricks, but again, focusing solely on the deterrent effect that a sentence like this would have raises due process issues, fairness issues, and Mr. Mackey was not sentenced appropriately. As I was saying, I'm sorry if I'm not effectively addressing Hendricks, but as I was saying, his specific factors, his specific characteristics, the life that he led before and after these events for which he pled guilty to were completely discarded, and I'm asking that this court remand this case for sentencing and ordering the trial court to more thoroughly address the reasonings behind his decision to focus almost primarily on deterrence as opposed to the specific characteristics of Mr. Mackey. And Judge, that would be all that I'm offering at this point unless there's more questions. Thank you, counsel. Thank you. Mr. Moyer. Good morning. May it please the court. Matt Moyer for the government. The district court did not err in sentencing defendant to a 55 months above guideline sentence where he belonged to a racketeering enterprise, committed an ambush-style murder, home invasion-style robbery, and witness tampering. First, the court did not commit procedural error, your honors. The court sufficiently considered the 3553A factors one at a time and applied them in a manner individualized to the defendant. It discussed the need to account for the seriousness of the crime, history and characteristics of the defendant, stated that it must balance all these competing considerations, and highlighted the aggravating factors that made the seriousness of the offense weigh most heavily in its sentencing decision. Those aggravating factors included how the defendant and others went hunting for rival gang members, how they left the victim dead with 13 bullet wounds in him, how a nearby witness with her children in tow saw the gunman firing into the victim as he lied motionless on the ground. Further highlighted the severity of the armed robbery and the witness intimidation that were part of the case. The court addressed the defendant's history and characteristics, remarking on the fact that he had one conviction but was found guilty of belonging to a racketeering enterprise that existed for over a decade. The court acknowledged a difficult, tumultuous upbringing. It acknowledged the defendant's family status and employment history. The 3553A factors were applied and in a manner individualized to the defendant. Next off, the court did in fact address the arguments in mitigation and did not simply thoughtlessly discard them as advanced by the defense. First, the court cited a lack of multiple convictions as a reason for not giving him an even longer sentence, which the court found might otherwise be warranted given the gravity of this conduct. Next, the court addressed difficult upbringing. It addressed arguments that the defendant had turned the page on gang life by pointing out that after the period of the racketeering enterprise, two years after when was arrested, he was arrested in possession of a firearm and narcotics. The court addressed employment history, family support, labeled the family support as one of the most mitigating things the defendant had going for him as well. The court addressed the argument that acceptance of responsibility should matter. It noted that that's part of the guidelines, but also that years after the murder had been committed, the defendant was bragging about that on social media. Finally, the court went through letters of support from defendants, friends, and family and appropriately discounted them where they described the defendant in a manner totally contradicted by the record. Counsel, our case law is that the greater the variance, the more robust we need the explanation or we're looking for an explanation from the district court. And so here we have the district court going 55 months above the guideline range. Do you see in the record, and if so, where the district court explaining how he lands on 55 months specifically? While the district court, Your Honor, does not explain exactly how it reached mathematically that number, it explained that the significance, the greater significance that was justified, or excuse me, the greater variation from the high end of the guidelines in this case was justified by the egregiousness of the conduct, which included the cold-blooded murder. It included certain things that aren't captured by the guidelines, like boastfully talking about having murdered someone years after murdering them and so forth. So the court ultimately believed that the 55 months variation above the high end of 365 months was justified by just how severe the conduct was and how not sorry the defendant was until he was arrested and pled guilty. So the district court, I agree with the district court's reasoning in Hendricks that the locality based factor of the epidemic of gun violence, as the court put it, was relevant in the context of general deterrence. As long as there's a reasonable nexus between the locality based factor and the defendant's conduct, then the factor is relevant. We have that here. The locality based factor was epidemic of gun violence. Defendant pled guilty to committing an egregious act of gun violence. Further, the district court did not rely on inaccurate information or culture characterizations. It was neither inaccurate nor unreasonable for the district court to characterize as hunting the act of traveling to rival gang territory with the sole purpose of finding and killing a rival gang member. The court's characterization of this behavior as hunting is accurate and reasonable. Further, to call the lack of convictions just luck is appropriate. The defendant was found guilty of participating in the affairs of the Loffa Street Gang from 2008 to 2018. The fact that he only had on his record a retail theft conviction, it makes it so that the characterization of just luck was, in fact, appropriate. Is our inference there supposed to be that the plea was to so much criminal conduct and none of that other criminal conduct had resulted in convictions? Yes, Your Honor. The plea was to conspiring to belong to the enterprise and the conduct he pled to was a murder in 2014, armed robbery about two years later, witness intimidation after that. The district court believed it was luck that he hadn't been convicted of something related to these racketeering affairs prior to this case. Further to that, Mr. Moyer, can you give us a feel for the scope of the indictment here in terms of number of defendants? How many went to trial? How many pleaded? How many might have been acquitted? Your Honor, I know there were 13 defendants. I don't know off the top of my head how many went to trial. I know it was several. There were, I believe at this point, the majority or all have been convicted. I know that the district court discussed the sentences of the people he had already sentenced up to the point of this sentencing. There were three other people the district court discussed having sentenced. None of them had pled guilty to having committed a murder. So all of their sentences were lesser than the one that was given to Mr. Mackey. But the court specified that was precisely because Mr. Mackey was convicted of murder and a number of other things. Finally, the 55 months above guideline sentence was substantively reasonable for the reasons I've already advanced. The court contemplated at length the severity of the murder offense, the robbery, the witness intimidation. And it spoke at length about the defendant, his history, his personal characteristics. The court spoke of the need to fashion a sentence in light of the sentencing goals and justified its departure logically and reasonably based on, in most parts, by how grievous this crime was. If there aren't any more questions at this time, I ask that this court affirm the district court's decision. Thank you, Mr. Moyer. Anything further, Mr. Moralia? Not to be argumentative of counsel, I think that he had stated that the murder and the attempt murder, which was the same incident, there was an individual standing next to the victim. As it relates to the robbery, witness intimidation, I think that occurred closer in time than I believe counsel said two years later. I think that was 2014 into 2015. I think the offenses happened within that time, if I'm not mistaken. And as far as the court, Judge Tharp indicating when considering the mitigation, and he did this repeatedly, that it was just luck that Mr. Mackey had not been caught up or been convicted or arrested for any crimes during that time period, was a presumption that just to the heart of my argument, which is the judge presumed that those guidelines were not appropriate at all. And he was basing this decision on almost entirely the egregious acts, but the egregiousness of the offense. And he was making an example out of Mr. Mackey to the exclusion of, relatively speaking, the good life that he had had outside of this gang activity. Beyond that, I have nothing further. Well, thank you very much. The case is taken under advisement. Thank you for argument today.